575 F.2d 1107
 98 L.R.R.M. (BNA) 2935, 84 Lab.Cas. P 10,691
 WINN-DIXIE STORES, INC., Petitioner-Cross Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.
AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH
AMERICA, AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 76-2733, 76-3558.
 United States Court of Appeals,
Fifth Circuit.
 June 26, 1978.
 
 Charles F. Henley, Jr., William H. Andrews, Jacksonville, Fla., for Winn-Dixie Stores.
 Elliott Moore, Deputy Associate Gen. Counsel, William R. Stewart, David F. Zorensky, John S. Irving, John E. Higgins, Jr., Carl L. Taylor, Washington, D. C., for N.L.R.B.
 Linda R. Hirshman, Robert S. Sugarman, Joseph M. Jacobs, Chicago, Ill., for Amalgamated Meat Cutters & Butchers Workmen of North America, AFL-CIO.
 Petitions for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board.
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 (Opinion 2/17/78, 5 Cir., 1978, 567 F.2d 1343).
 Before WISDOM and GEE, Circuit Judges, and VAN PELT,* District Judge.
 PER CURIAM:
 
 
 1
 The petitions for rehearing are DENIED, and no member of this panel nor judge in regular active service on the court having requested that the court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12), the petitions for rehearing en banc are DENIED.
 
 
 2
 The opinion of this panel is amended by adding immediately after the third full paragraph at 567 F.2d 1348 the following two paragraphs:
 
 
 3
 The Board found that the company plan mandated: (1) that employees covered by a union pension plan could not continue to participate in the company plan, and (2) that employees covered under a union pension plan must forfeit any account they already have under the company plan. Thus, according to the Board, just as the company's refusal to bargain over continued coverage under the company plan along with coverage under the new union plan was based on clause 2.4(b), the company's refusal to bargain over what would happen to existing employee accounts was likewise based on clause 2.4(b) and other clauses in the plan. While we have found substantial evidence on the record to support the Board's position as to the company's refusal to bargain over double coverage, the record does not present substantial evidence to support the finding that the provisions of the plan mandated forfeiture of existing accounts or that the company violated its duty to bargain by insisting on forfeiture.
 
 
 4
 In its brief, the Board cites several clauses in the plan, namely sections 7.3(d) and (e) and 7.4, 4a dealing with forfeiture of vested or partially vested accounts. Article VII, clause 7.3(d) provides that if a participating employee voluntarily terminates his employment or is discharged by his employer for conduct detrimental to the best interest of his employer and that employee is less than 35 years old, his entire account is forfeited. Clause 7.3(e) provides that all amounts forfeited by the termination of employment are to be allocated to the accounts of employees who continue to participate in the plan. Section 7.4 provides that if the company discharges an employee for theft, embezzlement or other dishonesty, his account will be forfeited and allocated in a manner identical to that provided for by section 7.3(e). These forfeiture provisions obviously do not apply in circumstances, such as those here, where an employee becomes covered under a union pension plan. Furthermore, in Article II, which defines the terms used in the plan, "forfeiture" is defined as "that portion of the account of a withdrawn employee to which he shall not be or become entitled." A "withdrawn employee" is, in turn, defined in section 2.13 as "a participating employee whose employment has been terminated prior to his death, disability or retirement . . . ." Thus, the plan deals with forfeiture only in the context of employees who no longer work for the company. In sum, the plan says nothing about forfeiture of existing accounts of employees who become covered by a pension plan as a result of collective bargaining.
 
 
 5
 We write this addition to our prior opinion to make clear that we do not hold that employee acceptance of an illegal proposal results in a waiver of employee rights. Our holding is that: (1) the company plan did not mandate forfeiture, and (2) the company's bargaining position regarding forfeiture was not illegal since it did not insist on that proposal in such a way as to violate its duty to bargain. The company was insisting only that the union take the entire Teamster deal or continue with provision-by-provision bargaining. Since the company bargained in good faith as to the forfeiture provision, there is no violation of 8(a)(3) or 8(a)(5). See Solo Cup Co., 176 N.L.R.B. 823, 824 n.3, 71 LRRM 1316, 1318 n.3 (1969).
 
 
 6
 The union's petition for rehearing also assails this court's refusal to enforce the Board's order that the company create accounts for all employees who would have been included in the company plan and that the company make deposits and payments with respect to those accounts as though they had existed since 1970. According to the union, our ruling means that an employer can discourage unionization, refuse to bargain, and yet not be forced to compensate his victims.
 
 
 7
 Although we are aware of the employees' plight, we cannot enforce a so-called "compensatory" remedy when there is no way to identify or quantify in real-world terms the harm suffered by the employees. The Board's remedy is simply too speculative, see Kroger Co. v. NLRB, 401 F.2d 682, 688-89 (6th Cir. 1968), cert. denied, 395 U.S. 904, 89 S.Ct. 1742, 23 L.Ed. 217 (1969), and the Board's rationale of recreating the status quo cannot withstand even the limited scrutiny we apply to Board orders. See Winn-Dixie Stores, Inc. v. NLRB, 567 F.2d 1343, 1351 (5th Cir. 1978); Kroger, supra. The only theory under which the extent of the harm could be set at the loss of participation in the company plan since 1970 is that the parties would have agreed to such continued coverage, in conjunction with coverage under the union plan, if the company had not maintained a discriminatory provision in its plan and had bargained in good faith. The Board does not purport to justify its order on such a theory, and, as we noted in our original opinion, 567 F.2d at 1351-52, the Board has recognized that it cannot fashion remedies on the basis of an assumption that the parties would have reached agreement on a specific provision.
 
 
 
 *
 Senior District Judge of the District of Nebraska, sitting by designation
 4a Section 7.3 Partially Vested Accounts
 In the event that a participating employee voluntarily terminates his employment or is discharged by his employer for conduct which, in the sole discretion of the Committee, is detrimental to the best interest of his employer (except as modified by Section 7.4 below) the amount then standing to the credit of his account shall be used and disposed of as follows:
 * * *
 
 
 d
 If such employee has not attained age thirty-five (35), the entire amount or value of his account shall be forfeited
 
 
 e
 All amounts forfeited by the termination of employment of any employee shall be allocated and credited to the accounts of the participating employees of his Employer as hereinabove provided
 Section 7.4 Forfeited Accounts
 In the event that any participating employee is discharged by his Employer for theft, embezzlement or other dishonesty, and the Employer shall submit to the Committee a written confession by such employee or shall submit to the Committee proof satisfactory, in the sole discretion of the Committee, that such employee has committed an act of theft, embezzlement or other dishonesty, the entire account of such participating employee shall be forfeited and shall be allocated and credited to the accounts of the other participating employees of such Employer as above provided.